### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**ANTHONY BRIAN THOMAS**                                              **PETITIONER**

**VERSUS**                          **CIVIL ACTION NO.  3:14CV834 CWR-LRA**

**RICK McCARTY, INTERIM COMMISSIONER**                    **RESPONDENT**
**of the MISSISSIPPI DEPARTMENT OF CORRECTIONS**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Anthony Thomas was convicted in the Circuit Court of Hinds County,

Mississippi, and seeks federal habeas relief under 28 U.S.C. § 2254.  After a review of

the entire record, the undersigned recommends that his petition be dismissed with

prejudice.

### Factual and Procedural Background

Thomas was convicted of aggravated assault (Count I) and of being a felon in

possession of a weapon (Count II).  He was sentenced as a habitual offender to

consecutive life terms without parole in the custody of the Mississippi Department of

Corrections.  The relevant facts are accurately described in the state court's opinion as

follows:

> Karen Burks and Anthony Thomas were living together when Burks was
> stabbed and left bleeding in their home. She managed to get next door
> where Laketa Evans contacted emergency services. Burks told Evans that
> Thomas had stabbed her. Burks was rushed to the hospital where she
> remained for weeks recovering from the attack.
>
> That night, law enforcement discovered a knife handle on the floor of
> Burks's apartment. The blade was missing. Thomas did not return to the

apartment that evening. Two weeks after her injury, Burks identified
Thomas from a photo lineup as her attacker.

Dr. Toves, a critical-care surgeon, cared for Burks while she was
recovering in the intensive-care unit. She testified that Burks had suffered
two stab wounds to the chest injuring her left lung and her internal
mammary artery and causing substantial bleeding.

Burks testified that she and Thomas "had words" that night before he
grabbed her from behind and stabbed her. Though she did not see the knife
during the attack, she recognized the handle as part of a set of knives she
kept in the kitchen.

Thomas testified that Burks had attacked him with the knife, and he was
trying to subdue her when she accidentally stabbed herself. He then pulled
the blade out of her chest, snapped the handle off so she would not be able
to use the weapon again, and threw the blade into their outdoor garbage.
Thomas left for a friend's house down the street, so he could call for help.
He did not return to the house because he was afraid Burks's son would
think he was responsible for her injury.

*Thomas v. State* ("*Thomas II*"), 178 So.3d 771, 773–74 (Miss. Ct. App. 2012).[1]

The Mississippi Court of Appeals affirmed both convictions on appeal. *Id.* In a

petition for writ of certiorari filed on February 1, 2013, Thomas argued that he was

entitled to a new trial because "the evidence was insufficient to convict him of being a

felon in possession of a prohibited weapon, and that, should this conviction be reversed,

he would be entitled to a new trial on the aggravated assault charge based on the doctrine

of 'retroactive misjoinder.'" *Thomas v. State* ("*Thomas III*"), 126 So.3d 877, 878 (Miss.

2013). The Mississippi Supreme Court affirmed Thomas's conviction and sentence for

aggravated assault on certiorari review, but reversed and dismissed Count II of the

---

[1]A jury previously convicted Thomas on both counts, but the case was reversed by the Mississippi Court of Appeals in 2009. *Thomas v. State* ("*Thomas I*"), 19 So.3d 130, 135 (Miss. Ct. App. 2009) (reversing for erroneous admission of evidence related to Thomas's prior felony conviction).

indictment for felon in possession for failing to charge an essential element of the crime.

*Id.* The court explained as follows:

> Mississippi Code Section 97–37–5 (Rev. 2006) makes it unlawful for any
> person who has been convicted of a felony to possess a list of certain
> weapons, including "any bowie knife, dirk knife, butcher knife, or
> switchblade knife." In Count II of the indictment, the State charged that
> Thomas "did willfully, unlawfully, knowingly and feloniously have in his
> possession a certain weapon, to-wit: *a knife,* he, the said Anthony J.
> Thomas, having been previously convicted of a felony. . . ." (Emphasis
> added). However, the mere possession of "a knife" is not a crime under
> Mississippi Code Section 97–37–5; only possession of those knives
> enumerated in the statute is a crime.

*Id.* at 878–79.  The court did not otherwise directly address Plaintiff's retroactive

misjoinder claim.

On October 28, 2014, Thomas filed the instant petition and asserted as his sole

ground for relief, the same retroactive-misjoinder claim raised on direct appeal and

certiorari review.  On December 2, 2014, he filed a motion to amend his petition to add

additional grounds for habeas relief.  On February 18, 2015, the undersigned issued a

report recommending that Thomas be allowed to proceed on the merits of his exhausted

claim set forth in his original petition, but that his motion to supplement be denied for

failure to exhaust his amended claims.  On March 13, 2015, United States District Judge

Carlton W. Reeves entered an order adopting the undersigned's report and

recommendation.[2]  This matter is now ripe for review.

---

[2]On March 18, 2015, Thomas filed a Motion to Hold Petition for Writ of Habeas Corpus in Abeyance
requesting that this Court hold this matter in abeyance while he exhausts his unexhausted claims in state court.  On
July 9, 2015, the undersigned issued a report recommending that the motion be denied for failure to present
extraordinary circumstances to warrant a stay and abeyance which was ultimately adopted by United States District
Judge Reeves on October 23, 2015.  ECF Nos. 7-12, 15-21.

## STANDARD OF REVIEW

This Court's review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996.  Under the Act, this Court cannot grant a petitioner federal habeas corpus relief for any claim that was adjudicated on the merits in a state court proceeding, unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Under 28 U.S.C. § 2254(d)(1), this court reviews questions of law as well as mixed questions of law and fact, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts.  *Id.*  Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case."  *Bell v. Cone*, 535 U.S. 685 694 (2002).  The state court's decision must be objectively unreasonable, not merely erroneous or incorrect.  *Wood v. Allen,* 558 U.S. 290, 301 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

## Discussion

Petitioner asserts that the doctrine of retroactive misjoinder entitles him to a new trial on his aggravated assault conviction because his felon-in-possession conviction was vacated by the Mississippi Supreme Court on certiorari review. Specifically, Thomas contends that under the retroactive misjoinder doctrine, he should be granted a new trial on count one because the evidence of his prior felony conviction had a sufficiently prejudicial spillover effect to deprive him of a fair trial on count one of the indictment.[3] The term "retroactive misjoinder" refers to circumstances in which the "joinder of

---

[3] Thomas principally relies on the Mississippi Supreme Court's holding in *Williams v. State*, 37 So.3d 717 (Miss. 2010), which held that a defendant was entitled to a new trial on an aggravated assault charge following the reversal of his conviction on a felon-in-possession charge under the doctrine of retroactive misjoinder. As further explained herein, our review is limited to whether the state court's failure to grant Thomas a new trial in this case was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence.

multiple counts was proper initially, but later developments -- such as a district court's dismissal of some counts for lack of evidence or an appellate court's reversal of less than all convictions -- render the initial joinder improper." *United States v. Jones,* 16 F.3d 487, 493 (2d Cir. 1994) (holding that a defendant must show compelling prejudice). Here, the state appeals court implicitly found that there was no evidentiary spillover from the possession charge that would justify granting Thomas a new trial on the aggravated assault charge.  The Court finds no unreasonable application of federal law in this determination.

This Court is "not concerned with the [Mississippi] law concerning joinder of offenses since our inquiry must be limited to [petitioner's] rights to a fair trial under the United States Constitution."  *Breeland v. Blackburn,* 786 F.2d 1239, 1240 (5th Cir. 1986).  Our review is limited to whether the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The undersigned finds no Supreme Court precedent addressing whether prejudicial spillover from evidence introduced on a vacated count requires a new trial on the remaining counts.  The Supreme Court has thus far taken no position. *See Black v. United States,* 561 U.S. 465, 474 n. 14 (2010) ("Black contends that spillover prejudice from evidence introduced on the mail-fraud counts requires reversal of his obstruction-of-justice conviction . . . That question, too, is one on which we express no opinion.").  Accordingly, some courts considering spillover claims have held that "it would be impossible for this Court to determine that the state court's

decision violated 'clearly established federal law as determined by the Supreme Court of the United States.'" *Couser v. Zon,* No. 05–CV–1040, 2008 WL 2440709, at *6 (N.D.N.Y. June 17, 2008) (citation omitted).

The Fifth Circuit has not directly addressed the retroactive misjoinder claims in the context of state habeas review.  However, in considering whether evidentiary spillover from a reversed count warrants a new trial on federal appeal, the Court has explained that "[a]t a minimum, drawing from our severance cases and authority from other circuits, the defendants must show that they experienced some prejudice as a result of the joinder of invalid claims, i.e., that otherwise inadmissible evidence was admitted to prove the invalid . . . claims."  *United States v. Edwards*, 303 F.3d 606, 640 (5th Cir. 2002); *see also United States v. Arledge*, 553 F.3d 881, 896 (5th Cir. 2008).  In doing so, the Fifth Circuit has joined other jurisdictions addressing prejudicial spillover by adopting a two-part test requiring a petitioner to demonstrate both that the "evidence was inadmissible and [that it was] prejudicial."  *Arledge*, 553 F.3d at 896 (quoting *Fiber Sys. Int'l, Inc. v. Roehrs,* 470 F.3d 1150, 1170 nn. 18 & 19 (5th Cir. 2006)); *see also United States v. Cross,* 308 F.3d 308, 319 (3d Cir. 2002) (explaining that courts must "conduct two distinct inquiries.  First, was there a spillover of evidence from the reversed count that would have been inadmissible at a trial limited to the remaining count?  Second, if there was any spillover, is it highly probable that it did not prejudice the jury's verdict on the remaining count, *i.e.,* was the error harmless?"); *Cf. Lindstadt v. Keane*, 239 F.3d 191, 205 (2nd Cir. 2001) (holding that three factors must be analyzed:  "1) whether the evidence on the vacated counts was inflammatory and tended to incite or arouse the jury

to convict the defendant on the remaining counts; 2) whether the evidence on the vacated counts was similar to or distinct from that required to prove the remaining counts; and 3) the strength of the government's case on the remaining counts") (citation omitted).

In this case, even if the Court were to find that the admission of Thomas's status as a convicted felon was constitutionally erroneous, he has failed to show that he suffered clear and compelling prejudice resulting in a fundamentally unfair trial. Thomas stipulated that he was a convicted felon prior to trial. The court's preliminary instruction informed the jury only as follows: "[T]he State and the defendant have stipulated that the defendant, Anthony Thomas, was a convicted felon as of May 21, 2006."[4] Contrary to his first trial, no additional information was given concerning the nature of the prior conviction or any other details. *See Thomas v. State* ("*Thomas I*"), 19 So.3d at 135 (reversing for erroneous admission of details related to Thomas's prior felony conviction in violation of Rule 404(b)); *U.S. v. Rock,* 282 F.3d 548, 552 (8th Cir. 2002) (prejudicial effect of joining felon-in-possession charge with witness tampering charge minimized by parties' stipulation to the fact of prior felony conviction, with no details); *U.S. v. Williams,* 923 F.2d 76, 78 (8th Cir. 1991) (appellant showed no real prejudice from court's refusal to sever felon-in-possession charge where stipulation contained no other information). In the instant case, the trial court, in fact, rejected the prosecutor's request to broach the subject in any way on cross-examination:

> BY THE COURT:  . . . [T]he Court has a real question whether or not an aggravated assault conviction could be used for impeachment purposes under Rule 609. And – and so you're asserting – you're not asking him

---

[4] ECF No. 14-2, p. 145.

what he [was] convicted of, you're just simply asking him if he's been convicted of a felony?

By MR. BREWER:   Obviously, at this point, unless something comes out that opens the door and we approach, I don't intend on getting into anything that has – any of the details, even the nature of the crime or where it occurred or anything of that effect. But I do feel like I'm entitled to at least ask him, "You are a convicted felon; is that correct?"

BY THE COURT:  . . . He has agreed that he's a convicted felon, and you can argue in front of the jury that he's agreed that he's a convicted felon. But for – I see no reason to get him to repeat that he admits that he's a convicted felon on the stand if by stipulation he's already done that. . . . .

BY THE COURT:  I don't think there's any relevance since he's already stipulated to that.[5]

Although no limiting instruction was given, the record reflects that the stipulation was mentioned briefly in closing arguments, and only in connection with explaining the elements of count two.  In the absence of any other information concerning his prior felony conviction, Thomas fails to demonstrate clear and compelling prejudice from the stipulation.

There was more than sufficient evidence to support his underlying aggravated assault conviction.  Thomas's defense at trial was that the victim charged at him with the knife after he threatened to leave her.  They struggled.  In the midst of that struggle, the victim snatched the knife and stabbed herself once in the chest.  He pulled the knife from her chest, broke off the knife's handle, and put the blade in his pocket to prevent the victim from attacking him at some later date.  He then threw the blade in the trash can

---

[5] ECF No. 14-4, pp. 36-38.

outside, and ran to a friend's house two blocks away to call an ambulance.  Thomas did this even though the victim's niece lived "right next door" and there was a neighbor across the street.  His explanation was that he doesn't "really mess" with her niece or the neighbors.  When he returned to the scene, Thomas testified that he saw the ambulance departing and decided to go to a park and think.  On cross-examination, he denied that the victim was stabbed more than once despite medical evidence that the victim sustained two stab wounds.  A bloody shirt with holes presumably made by a knife was introduced into evidence at trial.  Thomas denied that it was the shirt worn by the victim at the time of the stabbing, despite testimony from the responding officer identifying the shirt as the one he witnessed the victim wearing at the time.[6]

The jury was also presented with overwhelming evidence that Thomas was the aggressor.  The victim testified that Thomas attacked her from behind with a knife after they had "a few words."  She was certain that it was Thomas because he was the only person in the house, and she remembers him stabbing her.  A neighbor who had visited Thomas and the victim earlier that evening also testified that approximately ten minutes after she left, the victim "came outside bloody from head to toe."  When asked "how she got like that and who did it, [the victim] kept saying 'Anthony Thomas.'"  The jury also heard corroborating testimony from law enforcement that the victim identified Thomas as her attacker both at the scene and later in a photo line-up.[7]

_____

[6] ECF No.  14-3, pp. 58; 14-4, pp. 41-89.

[7] ECF No.  14-3, pp. 4-74, 84-114; 124-52; ECF No. 14-4, pp. 1-7.

In addition to this evidence, the victim's intensive care physician testified that the victim sustained two stab wounds to the chest.  One stab wound appeared to have pierced the victim's lung, while the other pieced her sternum injuring the internal mammary artery.  The physician explained that it took "substantial force to injure the internal mammary artery" because the sternum is "quite thick and it's quite strong."  Thomas himself testified that on the night of the incident, he was approximately six-feet, two-inches tall and weighed 195 pounds while the victim weighed approximately 90 pounds and only had the use of one arm due to a pre-existing condition.  When asked on direct examination whether "a one armed hundred pound woman could manage to stab herself in the chest with a knife potentially four inches long, or longer," the doctor testified that it was "extraordinarily unlikely."[8]

There was more than sufficient evidence to convict Thomas of aggravated assault under Mississippi law.  Count I of the indictment charged that Thomas "did willfully and feloniously, purposely or knowingly cause serious bodily injury to Karen Burks, a human being, with a certain deadly weapon, to wit:  knife, by then and there stabbing her in the chest, therefore manifesting an extreme indifference to the value of human life," in violation Miss Code Ann. 97-3-7- (2).[9]  The only relevant question in assessing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

---

[8] ECF No.  14-13, pp.  27-71; 14-4, p, 84.

[9] ECF No.  14-6, p. 3.

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Jackson* requires us to look to state law for the substantive elements of the offense, but "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S.Ct. 2060, 2064 (2012) (internal quotation marks omitted). *Jackson* claims "face a high bar in federal proceedings because they are subject to two layers of judicial deference." *Id.* at 2062. In the first layer, a state appeals court reviewing the sufficiency of the evidence sets aside the jury's verdict "only if no rational trier of fact could have agreed with the jury." *Id.* In the second layer, a federal court grants habeas relief only upon a finding that the state court's rejection of a sufficiency of the evidence claim was "objectively unreasonable." *Id.* Under *Jackson's* sufficiency of the evidence standard, juries have broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that they "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Viewing the evidence in the light most favorable to the State in this case, the jury heard sufficient evidence from which it could rationally infer that Thomas committed the statutory elements of aggravated assault beyond a reasonable doubt.

Given the absence of details or any other information regarding his prior aggravated assault conviction, Thomas fails to show that the jury was influenced by his stipulation that he was a convicted felon, or that the state court's refusal to grant him a new trial was contrary to or an unreasonable application of clearly established federal

law.  For these reasons, it is the recommendation of the undersigned United States

Magistrate Judge that this habeas petition should be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States*

*District Courts for the Southern District of Mississippi*, any party within 14 days after

being served with a copy of this Report and Recommendation, may serve and file written

objections.  Within 7 days of the service of the objection, the opposing party must either

serve and file a response or notify the District Judge that he or she does not intend to

respond to the objection.

The parties are hereby notified that failure to file timely written objections to the

proposed findings, conclusions, and recommendations contained within this report and

recommendation, shall bar that party, except upon grounds of plain error, from attacking

on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective

December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415,

1428-29 (5th Cir. 1996).

This the 20th day of January 2017.


/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE